UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LEAH SOPHIA ARREDONDO,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION, a Washington corporation, d/b/a COSTCO WHOLESALE 781; COSTCO WHOLESALE MEMBERSHIP, INC., a California corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No.: 25-cv-0292-AJB-MMP

**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT**

**(Doc. No. 46)**

Before the Court is Defendant Costco Wholesale Corporation's ("Costco") Motion to Enforce Settlement. (Doc. No. 46.) Plaintiff Leah Sophia Arredondo ("Plaintiff") opposed the motion (Doc. No. 56) and Costco replied (Doc. No. 57). For the reasons stated herein, Costco's motion is **GRANTED**.[1]

[1] The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Local Civil Rule 7.1.d.1.

## I. BACKGROUND

This action arises out of Plaintiff's July 30, 2022, visit to a Costco warehouse located in Chula Vista, California. (Doc. No. 1-3 ¶¶ 4, 12.) Plaintiff alleges that after she exited the store, she visited the food court where "she unknowingly stepped onto a material substance which caused her to slip and fall to the ground." (*Id.* ¶ 12.) Plaintiff alleges that as a "direct and proximate result of the negligence and conduct of Defendants," she "slipped and fell," causing her to suffer bodily injuries and damages. (*Id.* ¶¶ 7, 13). Plaintiff alleges that the substance on the ground "constituted a dangerous condition for visitors and customers," and Defendants "had actual and constructive notice of the dangerous condition prior to the incident." (*Id.* ¶ 14.) Plaintiff further alleges that Defendants "failed to post warning signs around the area of the dangerous condition, failed to direct people away from the dangerous condition or section off the areas of the store where the dangerous condition existed, and failed to remove/remedy the dangerous condition" prior to Plaintiff's slip-and-fall incident. (*Id.* ¶ 14.)

Plaintiff initiated this action on July 11, 2024, in California Superior Court asserting claims for negligence and premises liability. (Doc. No. 1-3.) On February 7, 2025, Costco removed the action to federal court. (Doc. No. 1.) Plaintiff then moved to remand the case alleging this Court lacked subject matter jurisdiction. (Doc. No. 4.) The Court subsequently denied the motion to remand. (Doc. No. 18.)

On May 1, 2025, the parties participated in an Early Neutral Evaluation ("ENE") before Magistrate Judge Michelle M. Pettit. (Doc. No. 17.) The Order following the ENE notes the following:

> On February 14, 2025, the Court issued a Notice and Order for Early Neutral Evaluation (ENE). ECF No. 3. This Order directed "all parties' to appear via videoconference for an ENE on April 28, 2025 (later moved to May 1, 2025), and directed counsel for non-English speaking parties to arrange for an interpreter's presence at the ENE. ECF Nos. 3 at 2, 12. Plaintiff's counsel appeared for the ENE without his client and without an interpreter for his non-English speaking client.

> After a delay, the aforementioned problems were resolved and the Court held an ENE on May 1, 2025.

The case did not settle at the ENE and the Court issued a Scheduling Order. (Doc. No. 18.)

On November 12, 2025, the parties participated in a Mandatory Settlement Conference ("MSC") before Judge Pettit. (Doc. No. 25.) Plaintiff attended the MSC and was represented by counsel. (*Id.*) Maria Flores, the same interpreter that was at the ENE, attended the MSC to interpret for Plaintiff. (*Id.*) A Costco representative and Costco's counsel also attended the MSC. (*Id.*) At the MSC, "[t]he parties settled all claims in their entirety and recorded settlement terms before the Court." (*Id.*) At the conclusion of the MSC, Judge Pettit went on the record with the parties and recited the terms of the settlement:[2]

> Okay. So the terms of the agreement that everyone's come to is payment of $25,000 from the defense to the plaintiff. This will be a waiver of all claims and will include confidentiality as well - - as well as a non-disparagement clause.
>
> The defense will have to - - sorry. The plaintiff will have to provide a CMS form for Medicare/Medi-Cal issues that will have to be provided to the defense. There will be a long-form release, and all parties will bear their own attorneys' fees and costs.
>
> From the plaintiff's side, have I missed any terms that you would want in the agreement?

(Doc. No. 46-3 at 3:4–15.)

Plaintiff's counsel responded: "No, no terms." (*Id.* at 3:16.) Judge Pettit then addressed Plaintiff directly: "Now turning to Ms. Arredondo, do you understand the terms of this agreement" and "do you agree to be bound by these terms?" (*Id.* at 3:20–4:3.)

[2] When the Court went on the record, it noted "for the record, Ms. Flores has been with us interpreting for Ms. Arredondo this entire time." (Doc. No. 46-3 at 3.)

Plaintiff responded in the affirmative to both questions. (*Id.*) Costco's representative similarly agreed to be bound by the terms of the settlement. (*Id.* at 4:11–20.)

The following day, Costco sent Plaintiff proposed settlement documents, including a proposed release, CMS form, W-9 form, and dismissal papers. (Doc. Nos. 46-2 ¶ 5; 46-4.) Plaintiff did not execute the documents. (Doc. No. 46-2 ¶ 6.) In January 2026, Plaintiff's counsel informed Costco that Plaintiff "is prolonging the process and hasn't signed yet." (Doc. Nos. 46-2 ¶ 6.; 46-5.)

The parties participated in Settlement Disposition Conferences before Judge Pettit on April 8, 2026; June 5, 2026; and June 18, 2026. (Doc. Nos. 33; 38; 39.) Plaintiff, Plaintiff's counsel, and an interpreter attended each Settlement Disposition Conference. (*Id.*) At the June 18 Settlement Disposition Conference, "Plaintiff represented she does not intend to sign the settlement agreement." (Doc. No. 39.) Judge Pettit then held Status Conferences with Plaintiff and her counsel on June 30, 2026, and July 16, 2026. (Doc. Nos. 41; 45.) Plaintiff did not sign the settlement agreement. Costco then filed the instant Motion. (Doc. No. 46.)

## II. LEGAL STANDARD

A district court has the inherent power to summarily enforce, by way of motion, a settlement agreement entered into while the litigation is pending before it. *In re City of Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement meaning "the parties have reached agreement on all material terms." *Callie*, 829 F.2d at 891. Second, both parties "must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute." *Marks-Forman v. Reporter Pub. Co.*, 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998) (internal citations omitted); *see Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir. 1977). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890.

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992) (quotation omitted). "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties. For this reason, the true intent of a party is irrelevant if it is unexpressed." *Id.* (citations omitted).

A motion to enforce a settlement is analyzed under a standard akin to summary judgment. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958–59 (9th Cir. 1994); *Hess v. Hanneman*, No. 14-cv-2271-CAB-JMA, 2017 WL 6027015, at *4 (S.D. Cal. Dec. 4, 2017). Thus, the Court may summarily enforce an agreement only where the admissible record establishes the absence of a genuine dispute of material fact regarding the agreement's existence, material terms, or the parties' assent. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine dispute. *Celotex*, 477 U.S. at 323.

A party opposing summary enforcement cannot create a triable factual dispute merely through argument, unsworn assertions in a brief, or speculation; she must identify competent evidence from which a reasonable factfinder could find in her favor on a material issue. *See Celotex*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving

party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (cleaned up). Rule 56(e) permits a summary judgment motion to be opposed "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ." *Id.*

"Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (emphasis in original) (citing *Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510, 1511 (9th Cir. 1984)); *see also In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958–59 (9th Cir. 1994) (holding summary enforcement improper where material facts disputed). Such factual disputes include "[w]hether the parties *intended* only to be bound upon the execution of a written, signed agreement . . . ." *Callie*, 829 F.3d at 890–91 (emphasis in original) (citations omitted). "In the absence of a signed writing, . . . the moving party must demonstrate that the parties intended to be bound in the absence of a fully executed agreement." *Schaffer v. Litton Loan Servicing, L.P.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274678, at *9 (C.D. Cal. Nov. 13, 2012) (citing *Callie,* 829 F.3d at 890–91).

## III. DISCUSSION

### A. The Settlement Agreement is Enforceable

In California, "a settlement agreement in a pending action may be enforced if two requirements are met: (1) both parties must have agreed to the terms of the settlement, and (2) it must be a complete agreement." *Aki v. Univ. of California Lawrence Berkeley Nat'l Lab'y*, No. 13-CV-04027, 2015 WL 1778481 (N.D. Cal. Apr. 17, 2015) (cleaned up) (quoting *Page v. Horel*, No. C–09–0289 EMC (pr), 2011 WL 5117562, at *4 (N.D. Cal. Oct. 28, 2011)). An "oral agreement is binding on the parties, particularly when the terms are memorialized into the record," and "even if a party has a change of heart [after agreeing] to its terms but before the terms are reduced to writing." *Doi v. Halekulnai Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (quoting *Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000)). A party's refusal to sign written settlement documents after an in-court oral

agreement does not defeat enforcement. *See id.* at 1138 (holding that appellant was bound by the settlement agreement, despite not signing a written contract, because she affirmed the terms on the record in open court). Provisions "in full accord with the terms of agreement stated in open court" are enforceable. *Id.* at 1139–40.

Plaintiff does not dispute that the settlement conference occurred, that Judge Pettit recited the quoted terms, or that she responded affirmatively when asked whether she understood and agreed to be bound. (Doc. No. 56 at 4 ("Plaintiff [ ] does not dispute that a settlement conference took place on November 12, 2025, before Judge Pettit, or that the outline of an agreement—payment of $25,000 in exchange for a release, confidentiality, and a non-disparagement clause—was recited on the record.").) Plaintiff nevertheless contends that enforcement of the settlement is improper because genuine factual disputes exist concerning whether her assent was knowing, informed, and voluntary. (*Id.*) Notably, Plaintiff offers no direct testimony by way of a Declaration, and the evidence provided by Costco demonstrates that Plaintiff confirmed her agreement to the settlement.

Plaintiff argues that the settlement is not enforceable because the Court did not ask her "whether she understood how much she owed her medical providers, or whether $25,000 would be sufficient to cover those obligations, or what if anything she would be left with after her medical providers were paid." (*Id.* at 2–3.) "Plaintiff contends that at the time of entering the settlement she was unaware of the full extent of the medical bills or that the amount billed by the medical providers exceeded the proposed settlement amount." (*Id.* at 4.) Additionally, Plaintiff maintains that the CMS-form provision left medical and lien issues open. (*Id.*) Finally, Plaintiff argues that her "two one-word affirmations ("Sí") made over the telephone and translated in real time by her attorney's Spanish speaking assistant" cannot be construed as "unassailable proof that Plaintiff knowingly and voluntarily agreed to release all of her claims against Costco for a sum grossly disproportionate to her actual damages." Plaintiff's arguments fail.

Here, the record is clear—the parties entered into a full and binding settlement agreement. The parties, on the record before the Court, agreed to all the material terms of

the settlement agreement: Costco would pay Plaintiff $25,000; Plaintiff would waive all claims; the agreement would include confidentiality and non-disparagement provisions; Plaintiff would provide a CMS form; the parties would execute a long-form release; and each side would bear its own fees and costs. (Doc. No. 46-3 at 3:4–13.) The record also establishes objective mutual assent. After Judge Pettit recited the terms, counsel for both Plaintiff and Costco confirmed that no settlement terms had been omitted. (*Id.* at 3:16–19.) Plaintiff personally confirmed, through the interpreter who had been interpreting for her throughout the MSC as well as several previous and subsequent hearings, that she understood the terms and agreed to be bound. (*Id.* at 3:20–4:3.) Costco's authorized representative did the same. (*Id.* at 4:4–20.) Plaintiff's present dissatisfaction with the economic consequences of that agreement does not negate her unambiguous assent given at the settlement conference. *See Doi*, 276 F.3d at 1138; *see also Aki*, 2015 WL 1778481, at *4–5). Plaintiff argues that at the time the Settlement was entered into, no one "could reasonably foresee that many of [Plaintiff's] treating medical providers would refuse to negotiate and reduce the amount of Plaintiff's outstanding medical expenses." (Doc. No. 56 at 4.)

Plaintiff's assumption that the outstanding medical bills would be reduced by the providers is unavailing. Plaintiff's counsel, and thereby Plaintiff herself, were aware that there was a balance outstanding.[3] If Plaintiff was unaware of her outstanding expenses and repayment duty as she now claims, that is the fault of Plaintiff's counsel, who apparently believed they could negotiate and minimize the expenses with the medical providers. The responsibility to understand the amount owed and the circumstances of repayment rested with Plaintiff, not the Court or Costco. Plaintiff should have fully considered and

---

[3] The parties have provided the Court with the Confidential Settlement Briefs submitted to Judge Petit in advance of the MSC. The Court has reviewed those briefs. The Court will not discuss the briefs in detail, but Plaintiff's Counsel provides an extensive course of treatment, and an itemization of over $80,000 in medical expenses.

understood these matters before agreeing to the Settlement or, alternatively, made resolution of these issues a condition of the Settlement.

The anticipated long-form release did not leave the settlement incomplete. The parties expressly agreed that there "will be a long-form release," after the operative material terms had been stated and accepted. (Doc. No. 46-3 at 3:9–13.) The record contains no evidence that execution of that document was a condition precedent to contract formation or that the parties reserved a material term for future agreement. Under California law, "[w]hen parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement." *Bryant v. Amtrak*, No. 08-CV-458-WQH-RBB, 2011 WL 291233, at *3 (S.D. Cal. Jan. 26, 2011) (quoting *Blix St. Records, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (2010); *see also Elyaoudayan v. Hoffman,* 104 Cal. App. 4th 1421, 1431 (2003) ("Having orally agreed to settlement terms before the court, parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms.").

Finally, regarding Plaintiff's argument that she should not be bound by "two one-word answers in the affirmative ("Sí")," the Ninth Circuit disposed of this argument in *Doi v. Halekulnai Corp.* In *Doi*, an employee filed a discrimination lawsuit against her employer. *Doi*, 276 F.3d at 1134. The parties entered into settlement negotiations, and the district court facilitated discussions that ultimately bore a settlement agreement. *Id.* In open court, the parties announced that they had reached a settlement and placed the terms of the settlement on the record. *Id.* The attorney for the employer recited the terms of the settlement, and the attorney for the employee assented to the terms. *Id.* The court then asked the employee, "The terms, as stated right now, do you agree to those? . . . You do agree?" *Id.* The employee responded, "Yeah." *Id.*

The Ninth Circuit held that plaintiff's one-word response of "Yeah" was unambiguous and binding. *Id.* at 1137 ("Doi thus agreed to the terms stated in open court: whatever its grammatical flaws, there is nothing ambiguous about the response, 'yeah.'"). Likewise, "there is nothing ambiguous" about Plaintiff's response here. *See id.* Plaintiff

unequivocally responded “Sí” when asked if she understood the terms of the agreement and whether she agreed to be bound by those terms. (Doc. No. 46-3 at 3:20–4:3.) Thus, it is clear that Plaintiff understood and agreed to be bound by the terms of the settlement.

**B. Plaintiff’s Asserted Mistake Does Not Warrant Rescission**

Under California law, a contract may be rescinded if “the consent of the party rescinding . . . was given by mistake[.]” Cal. Civ. Code § 1689(b)(1). “A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances.” *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 278 (2001). A mistake of fact is defined by California law to mean: “a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . .” Cal. Civ. Code § 1577. The rescinding party bears the ultimate burden of proving the contract is voidable based on a unilateral mistake of fact. *Roth v. Jaguar Land Rover N. Am., LLC*, No. SACV1701522AGDFMX, 2017 WL 10545074, at *3 (C.D. Cal. Dec. 4, 2017) (“When ‘the meaning of the relevant contractual language is not in dispute, the party alleging the mistake . . . bears the burden of proving that a mistake occurred.’”) (quoting *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 525 (2002)).

Plaintiff has not raised a triable issue supporting rescission. The asserted mistake is that Plaintiff allegedly did not know the full amount of her medical bills or liens and did not anticipate that providers might decline to negotiate reductions. (Doc. No. 56 at 7–9.) Even accepting those assertions for purposes of analysis, they describe a mistake of judgment about Plaintiff’s own obligations and the future conduct of nonparty lienholders—not a mistake concerning the agreed settlement or its terms.

Plaintiff has not submitted evidence demonstrating that Costco caused the alleged misunderstanding or that Costco knew Plaintiff did not understand that the settlement would resolve the action. On the contrary, the settlement terms expressly provided for a $25,000 payment and a waiver of all claims, and Plaintiff confirmed that she understood and accepted those terms. (Doc. No. 46-3 at 3:4–13, 3:20–4:3.)

Nor has Plaintiff shown that she did not bear the risk of her alleged mistake. Information about Plaintiff's own medical treatment, bills, liens, and agreements with providers was particularly within Plaintiff's and her counsel's ability to investigate and assess before agreeing to settlement. The possibility that third-party providers might refuse to discount claimed liens was likewise a risk associated with Plaintiff's arrangements with those providers, not a term Costco agreed to assume. *See Donovan*, 26 Cal. 4th at 282–84.

Finally, enforcement is not unconscionable on this record. Plaintiff was represented by counsel, attended the court-supervised settlement conference, received interpretation, and had an opportunity to seek clarification or object to the terms. Plaintiff expressly stated that she understood the terms of the settlement and accepted those terms. The fact that a settlement becomes less favorable than one party hoped after accounting for that party's own liens does not render the agreement procedurally or substantively unconscionable. *See Aki*, 2015 WL 1778481, at *4–5.

**C. Plaintiff is Not Entitled to an Evidentiary Hearing**

Plaintiff correctly invokes *Callie* for the principle that an evidentiary hearing is required where material facts about the existence or terms of a settlement are genuinely disputed. *See Callie*, 829 F.2d at 890. But that rule does not apply simply because a party characterizes her present disagreement with an agreed upon settlement as a factual dispute. In *Callie*, the record contained conflicting evidence concerning whether the parties intended to be bound only upon executing a written settlement and whether they had agreed on the precise method for securing payment. *Id.* at 890–91. Those were disputes about contract formation and material settlement terms.

No comparable evidentiary conflict appears here. Plaintiff does not dispute the terms Judge Pettit recited. Plaintiff does not contend that the parties agreed to make lien resolution a condition of settlement. And Plaintiff does not submit a declaration—or any other competent evidence—establishing that she misunderstood the terms, that the interpreter inaccurately translated them, that she did not assent, or that Costco knew of or induced a different understanding. Plaintiff's Opposition contains factual assertions about

her medical expenses and her subjective understanding, but argument in a memorandum is not evidence.

This distinction is dispositive under the summary judgment standard governing this Motion. Costco supplied admissible evidence in the form of the official hearing transcript and counsel's declaration with supporting exhibits. Plaintiff, in contrast, submits no evidence to establish a genuine dispute of material fact. She cannot defeat summary enforcement merely by arguing that her one-word affirmative answers were insufficient, that the settlement amount later proved inadequate to address third-party medical liens, or that an evidentiary hearing might reveal facts supporting rescission. On this record, there is no triable dispute concerning the settlement's existence, its material terms, or Plaintiff's objective assent. An evidentiary hearing is therefore not necessary. *See Doi*, 276 F.3d at 1139 (holding that an evidentiary hearing was not warranted because the parties agreed in open court that an agreement had been reached); *see also Aki*, 2015 WL 1778481, at *5 (finding an evidentiary hearing unnecessary when "the existence of a settlement agreement and its particular terms are plainly set forth in the transcript of the settlement hearing").

Plaintiff's reliance on the CMS-form requirement and Judge Pettit's general closing remarks does not alter this conclusion. The transcript identifies the CMS form as an obligation Plaintiff would provide to Costco. (Doc. No. 46-3 at 3:9–11.) Nothing in the transcript states that the amount of Plaintiff's liens, the providers' willingness to compromise them, or Plaintiff's net recovery would be determined later or would condition the parties' settlement obligations. Nor do Judge Pettit's aspirational remarks that the settlement would allow the parties to move on and get Plaintiff "a little bit of cash or pay it for the medical bills" add an unstated contingency to the expressly recited agreement. (*Id.* at 9:17–20.)

## IV. CONCLUSION

For the foregoing reasons, the Court finds Plaintiff is bound by the terms of the settlement agreement reached at the November 12, 2025 Mandatory Settlement Conference

before Magistrate Judge Pettit. Costco's Motion to Enforcement Settlement is **GRANTED**. Accordingly, the Court **ORDERS** as follows:

1. The parties must fully comply with the settlement terms as set forth at the November 12, 2025 Mandatory Settlement Conference no later than **October 30, 2026**.

2. The parties must file a joint motion to dismiss this case with prejudice by no later than **November 16, 2026**.

3. If the joint motion to dismiss is not filed by **November 16, 2026,** a settlement disposition conference will be held on **November 19, 2026, at 10:00 a.m.** in Courtroom 4A before the Honorable Anthony J. Battaglia. At that hearing the Court will enter judgment enforcing the settlement and dismissing the case.

**IT IS SO ORDERED.**

Dated: October 9, 2026

Hon. Anthony J. Battaglia
United States District Judge